IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE S. ARMSTRONG,<br><br>           Plaintiff,<br><br>      vs.<br><br>CALIFORNIA STATE CORRECTIONAL INSTITUTIONS, et al.,<br><br>           Defendants.<br>_____/ | Case No. 1:10-cv-01856 OWW JLT<br><br>ORDER FINDING COGNIZABLE CLAIMS IN THE THIRD AMENDED COMPLAINT AND AUTHORIZING SERVICE<br><br>(Doc. 12) |

Plaintiff is proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. By order filed February 25, 2011, the Court dismissed Plaintiff's second amended complaint with leave to amend. Now pending before the Court is Plaintiff's third amended complaint filed March 24, 2011.

**I.      SCREENING REQUIREMENT**

The Court is required to review a case filed in forma pauperis. See 28 U.S.C. § 1915(e)(2). The Court must review the complaint and dismiss any portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). If the Court determines that the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies in the pleading can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

1

The Civil Rights Act under which this action was filed provides a cause of action against any "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983. To prove a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional or federal right, and (2) the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). In other words, there must be an actual causal connection between the actions of each defendant and the alleged deprivation. See Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Nevertheless, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." Twombly, 550 U.S. at 555-57. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570).

**II.   THE THIRD AMENDED COMPLAINT**

Plaintiff identifies the following employees for the California Department of Corrections and Rehabilitation (CDCR) as defendants to this action: (1) Director of Nursing Shirleen Wright-Pearson; (2) Supervising Nurse Manjula Nair; (3) Supervising Nurse Waldine Doering; (4) Dr. Marta Spaeth; (5) Dr. Jonathan Akanno; (6) Dr. Ismail Patel; (7) Nurse Lourdez Villaruz; and (8) Does 1-X. (Doc. 12, Third Am. Compl., at 1-2.)

Plaintiff alleges as follows.  From 2005 to 2006, Plaintiff was employed as a registered nurse for the CDCR at Kern Valley State Prison.  (Id. at 3.)  During the course of her employment there, Plaintiff was subjected to a hostile working environment, which included, among other things, inappropriate touching by Defendant Akanno and comments from Defendant Spaeth that Plaintiff should "shut her yap," that Plaintiff had "nice implants," and that Defendant Spaeth hated Plaintiff and would like to see her fired.  (Id. at 3-4.)  Plaintiff was also subjected to false accusations regarding her job performance.  These included (1) accusations by Defendants Akanno, Spaeth, and Patel that Plaintiff issued medical orders without a physician's consent; (2) accusations by Defendants Spaeth, Doering, Wright-Pearson, and Nair that Plaintiff was practicing medicine outside the scope of her authority; (3) accusations by Defendant Wright-Pearson that Plaintiff appeared to be using drugs; (4) accusations by Defendant Villaruz that the narcotics cart was always off-count when Plaintiff was working; and (5) accusations by Defendant Doering that Plaintiff worked unapproved overtime.  (Id. at 4-5.)

On top of this, Defendants Spaeth, Nair, Doering, and Wright-Pearson tampered with "vital documents" relating to Plaintiff's employment in order to have Plaintiff fired and investigated by the Board of Nursing.  (Id. at 4.)  Defendants Wright-Pearson, Doering, and Nair fabricated Plaintiff's own resignation letter.  (Id.)  Ultimately, all this led to the termination of Plaintiff's employment as a registered nurse with the CDCR.  (Id. at 5.)  Criminal prosecution was also initiated against Plaintiff, but Plaintiff was found not guilty of those charges.  (Id.)

In Plaintiff's view, the above actions and events were driven by Defendants' desire to retaliate against her for speaking to her supervisors and union regarding illegal practices taking place at Kern Valley State Prison.  (Id.)  Specifically, Plaintiff voiced concern that nurses were forced to respond to emergencies and other medical situations where a physician, not a nurse, was required.  (Id.)  Plaintiff complained that as a result, nurses were forced to practice medicine that was outside the scope of their authority.  (Id.)  Plaintiff maintains that she was not required, as part of her job, to voice or lodge any of these complaints.  (Id.)

Based on the foregoing, Plaintiff claims that Defendants Spaeth, Akanno, Patel, Doering, Nair, Wright-Pearson, and Villaruz retaliated against her in violation of the First Amendment.  (Id. at 6-9.)  Plaintiff also asserts state law claims for defamation against Defendants Villaruz, Wright-Pearson, and

3

Nair. (Id. at 10-11.) In terms of relief, Plaintiff seeks to recover compensatory and punitive damages. (Id. at 12.)

### III.     DISCUSSION

#### A.     First Amendment Retaliation

"The Supreme Court [of the United States] has clearly stated that public employees do not shed their First Amendment rights simply because they are employed by the government." Huppert v. City of Pittsburg, 574 F.3d 696, 702 (9th Cir. 2009). "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest.'" Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

A First Amendment retaliation claim against a government employer in this regard involves a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action event absent the protected speech.

Eng, 552 F.3d at 1070. The plaintiff bears the burden on the first three steps, but the burden then shifts to the defendant at the fourth and fifth steps. Id. at 1070-72.

#### 1.     Matter of Public Concern

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnohmah County, Or., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). For example, "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004). "On the other hand, speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)). In any event, "[w]hether an employee's speech

addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.

Here, Plaintiff alleges that she voiced concern over the chronic absence of physicians at Kern Valley State Prison, which often forced nurses to practice medicine that was outside the scope of their authority. Plaintiff's speech appears to touch upon matters of public concern on two levels. First, the public has a "great" interest in the proper administration of its prisons, see Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006), including whether inmates are being provided adequate access to physicians and medical care. Second, to the extent that Plaintiff complained that nurses were practicing medicine as if they were physicians, Plaintiff's speech implicates illegal activity within a government agency, which is of public concern. See Thomas, 379 F.3d at 809; Roth v. Veteran's Admin., 856 F.2d 1401, 1406 (9th Cir. 1988) (speech regarding unethical conduct, misuse of resources, and violations of safety regulations at the VA was a matter of public concern). Accordingly, Plaintiff has sufficiently alleged that she engaged in speech that was of public concern.

### 2. Speech as a Private Citizen or Public Employee

"Statements are made in the speaker's capacity as [a] citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." Eng, 552 F.3d at 1071 (internal quotation marks and citations omitted). In other words, "speech which 'owes its existence to an employee's professional responsibilities' is not protected by the First Amendment." Huppert, 574 F.3d at 704 (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).

Whether Plaintiff spoke as a private citizen is a close call. It is conceivable that when Plaintiff complained to her supervisors about nurses being forced to practice medicine as if they were physicians, the speech was intertwined with, and the product of, her job duties. In that case, Plaintiff's statements would have been made as a public employee and would not be protected under the First Amendment. However, Plaintiff also alleges that she voiced her complaints to her union and that doing so was not a part of her official duties as a CDCR nurse. This comes closer to speech made as a private citizen. Construing the pleading in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently alleged that her speech was made in the capacity of a private citizen.

### 3. Substantial or Motivating Factor for Adverse Employment Action

Adverse employment actions within the context of a First Amendment retaliation claim are actions taken by a defendant that are "reasonably likely to deter [a plaintiff] from engaging in protected activity under the First Amendment." Coszalter, 320 F.3d at 976. Here, Plaintiff alleges a multitude of actions taken by Defendants that were done in an effort to retaliate against Plaintiff for her speech. In particular, Plaintiff maintains that Defendant Akanno physically harassed Plaintiff; Defendant Spaeth verbally harassed Plaintiff; and Defendants Akanno, Spaeth, Wright-Pearson, Doering, Nair, Villaruz, and Patel made false accusations against Plaintiff regarding her job performance and sought to have her fired. Accordingly, Plaintiff has sufficiently pled that Defendants subjected her to adverse employment actions. See id. at 976-77 (repeated and ongoing verbal harassment and humiliation, false accusations in the workplace, unwarranted disciplinary investigations, and unwarranted criminal investigations all constitute adverse employment actions).

To show that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff can show that (1) a temporal nexus exists between the adverse action and plaintiff's protected speech; (2) a defendant expressed opposition to the protected speech; or (3) the proffered explanation for the adverse action was false or pretextual. Id. at 977. Here, Plaintiff alleges that the adverse actions listed above all occurred "shortly after" Plaintiff voiced concern to her supervisors and union over the illegal practices taking place at Kern Valley State Prison. In addition, Plaintiff alleges that the accusations made against her by the Defendants were false and the discipline taken against her was baseless. At this early stage of the litigation, Plaintiff has sufficiently shown that retaliation was a motivating factor behind the adverse employment actions she faced.

### B. Defamation

Defamation can take the form of slander or libel. Cal. Civ. Code § 44. Slander is defined as a false and unprivileged publication, orally uttered, which:

    1. Charges any person with crime, or having been indicted, convicted, or punished for crime;

    2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

    3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or

6

      other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

      4. Imputes to him impotence or a want of chastity; or

      5. Which, by natural consequence, causes actual damage.

Cal. Civ. Code § 46. Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye. Cal. Civ. Code § 45. A written statement is libel per se if it defames the plaintiff on its face, that is, without the need of extrinsic evidence to explain the defamatory nature of the statement. Cal. Civ. Code § 45a.

      Here, Plaintiff alleges that Defendants Nair, Wright-Pearson, and Villaruz made false, oral statements imputing Plaintiff's professional integrity as a nurse. In particular, Defendant Nair allegedly told Plaintiff's supervisors and co-workers that Plaintiff was on drugs; Defendant Wright-Pearson told Plaintiff's superiors and co-workers that Plaintiff was practicing medicine as if she were a physician; and Defendant Villaruz told Plaintiff's superiors and co-workers that the narcotics cart was always off-count whenever Plaintiff was working. Based on foregoing, Plaintiff appears to state cognizable claims for defamation (slander per se) against Defendants Nair, Wright-Pearson, and Villaruz. See Regalia v. Nethercutt Collection, 172 Cal. App. 4th 361, 369 (2009) (noting that false allegations of unethical activity or professional incompetence give rise to a claim for slander per se).

**IV.  CONCLUSION**

      In sum, Plaintiff appears to state cognizable claims for retaliation under the First Amendment against Defendants Akanno, Spaeth, Wright-Pearson, Doering, Nair, Villaruz, and Patel. Plaintiff also appears to state cognizable state law claims for defamation against Defendants Wright-Pearson, Nair, and Villaruz. Accordingly, it is **HEREBY ORDERED** that:

    1.    Service of the third amended complaint is appropriate for, and shall be initiated on:

        a.    Shirleen Wright-Pearson

        b.    Manjula Nair

        c.    Waldine Doering

        d.    Marta Spaeth

        e.    Jonathan Akanno

      f.     Ismail Patel

      g.    Lourdez Villaruz

2. The Clerk of the Court shall send Plaintiff seven (7) USM-285 forms, one (1) summons, one (1) Notice of Submission of Documents form, an instruction sheet, and a copy of the endorsed third amended complaint filed March 24, 2011 (Doc. 12).

3. Within thirty (30) days from the date of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

    a.    One completed summons;

    b.    One completed USM-285 form for each defendant listed above; and

    c.    Eight (8) copies of the endorsed third amended complaint.

4. Plaintiff need not attempt service on Defendants and need not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve Defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

5. Failure to comply with this order will result in a recommendation that this action be dismissed.

IT IS SO ORDERED.

Dated: **April 26, 2011**                          **/s/ Jennifer L. Thurston**
                                                 UNITED STATES MAGISTRATE JUDGE