**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARRIE ARMSTRONG,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SHIRLEEN WRIGHT-PEARSON, et al.,<br><br>　　　　Defendants,<br>_____/ | CASE NO. CV-F-10-1856 LJO JLT<br><br>**ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT ON PLEADINGS** (Doc. 31) |

### INTRODUCTION

Plaintiff Carrie Armstrong ("Ms. Armstrong"), appearing in propria persona, asserts First Amendment retaliation and defamation claims against defendants Shirleen Wright Pearson ("Ms. Pearson"), Manjula Nair ("Ms. Nair"), Waldine Doering ("Ms. Doering"), Marta Sapeth ("Dr. Spaeth"), Jonathan Akanno ("Dr. Akanno"), Ismail Patel ("Dr. Patel"), and Lourdes Villaruz ("Ms. Villaruz") (collectively "Defendants"). Defendants move for judgment on the pleadings, arguing that Ms. Armstrong's First Amendment claims are barred by the statute of limitations and her defamation claims fail for failure to exhaust administrative remedies. Ms. Armstrong opposes the motion for judgment on the pleadings, arguing that the statute of limitations on her First Amendment claims did not begin until she discovered the basis on her claims in 2010. In addition, Ms. Armstrong argues that her defamation claims fall outside of the California Government Tort Claims Act. Finally, Ms. Armstrong submits a proposed fourth amended complaint, asking for leave to amend. For the following reasons, this Court GRANTS in part and DENIES in part Defendants' Fed. R. Civ. P. 12(c) motion.

## Background

Ms. Armstrong was employed as a registered nurse with the California Department of Corrections and Rehabilitation ("CDCR") from 2005 through 2006. She alleges that during her employment, she "stood up and spoke out against" behavior that she found to be improper at CDCR. "Shortly after" she spoke out, Ms. Armstrong alleges, Defendants retaliated against her by plotting against her to have her terminated, investigated at CDCR and investigated criminally. Ms. Armstrong alleges that Defendants' actions and defamatory statements led to her termination and a criminal prosecution.

## Speech Activities

During 2005 and 2006, Ms. Armstrong spoke to her supervisors and union regarding what she considered to be illegal practices and procedures at Kern Valley State Prison. Specifically, Ms. Armstrong voiced concern that nurses were forced to respond to emergencies and other medical situations that required the presence of a physician. Ms. Armstrong complained that as a result, nurses were forced to practice medicine, outside the scope of their authority, by responding to these medical situations and being forced to write prescriptions for inmates. Ms. Armstrong also complained about one particular inmate who needed a special diet but who did not receive the special diet.

## Alleged Retaliation

Ms. Armstrong alleges that Defendants retaliated against her for making these complaints in a number of ways. Ms. Armstrong contends that Dr. Spaeth told Ms. Armstrong to "shut her yap" and stated that she hated Ms. Armstrong and would like to see her fired. Ms. Armstrong further alleges that Dr. Spaeth told her that she had "nice implants." Ms. Armstrong alleges that she was also subjected to false accusations regarding her job performance, including: (1) accusations by Drs. Akanno, Spaeth, and Patel that Ms. Armstrong issued medical orders without a physician's consent; (2) accusations by Ms. Spaeth, Ms. Doering, Ms. Wright-Pearson, and Ms. Nair that Ms. Armstrong was practicing medicine outside the scope of her authority; (3) accusations by Ms. Wright-Pearson that Ms. Armstrong appeared to be using drugs; (4) accusations by Ms. Villaruz that the narcotics cart was always off-count when Ms. Armstrontg was working; and (5) accusations by Ms. Doering that Ms. Armstrong worked unapproved overtime. In addition, Ms. Armstrong alleges that Ms. Spaeth, Ms. Nair, Ms. Doering, and Ms. Wright-

Pearson tampered with "vital documents" relating to her employment to have Ms. Armstrong fired and investigated by the Board of Nursing. Ms. Armstrong asserts that Ms. Wright-Pearson, Ms. Doering, and Ms. Nair even fabricated Ms. Armstrong's resignation letter.

### Defamation

Ms. Armstrong alleges three claims for defamation. She alleges that Ms. Wright-Pearson falsely informed agents of CDCR that Ms. Armstrong appeared to be in drugs. She alleges that Ms. Nair falsely informed agents of CDCR that Ms. Armstrong was practicing outside the scope of her authority as a nurse. Ms. Armstrong alleges that Ms. Villaruz falsely informed agents of CDCR that the med car was always off count for narcotics when Ms. Armstrong controlled it. These defendants allegedly made these statements in 2005 and 2006.

### Adverse Employment Actions

In 2006, Ms. Armstrong was "placed on a leave of absence." TAC ¶12. Ms. Armstrong alleges that the actions of Defendants eventually led to her termination of employment. In addition, Ms. Armstrong alleges that Defendants' actions and false accusations caused Ms. Armstrong to face criminal prosecution.

### Procedural History

Ms. Armstrong initiated this action on April 30, 2010. Ms. Armstrong proceeds on her third amended complaint ("TAC") and asserted ten causes of action against Defendants. In Counts One through Seven, Ms. Armstrong asserts that Defendants retaliated against her in violation of the First Amendment and 42 U.S.C. §1983 ("Section 1983"). In Counts Eight through Ten,[1] she asserts state law claims for defamation against Ms. Villaruz, Ms. Wright-Pearson, and Ms. Nair. Ms. Armstrong seeks to recover compensatory and punitive damages.

On April 27, 2011, the court found that Ms. Armstrong's TAC stated cognizable claims and authorized service against Defendants. Defendants moved for judgment on the pleadings on September 26, 2011. Ms. Armstrong opposed the motion on October 24, 2011. Defendants filed a reply on October 31, 2011. This Court found this motion suitable for a decision without a hearing and vacated

---

[1] In her third amended complaint, Ms. Armstrong erroneously asserts "Ninth Claim for Relief" twice. This Court construes the second "Ninth Claim for Relief" as her "Tenth Claim for Relief" and refers to that claim herein as Count Ten.

the November 8, 2011 hearing on this motion.  Having considered the parties arguments, the TAC, and the applicable case law, this Court issues the following order.

## DISCUSSION AND ANALYSIS

**A.  Standard of Review**

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  This Court applies essentially the same standards of review on a Fed. R. Civ. P. 12(c) motion as those applied to Fed. R. Civ. P. 12(b)(6) motions: i.e., judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990). The Court must assume the truthfulness of the material facts alleged in the complaint and all inferences reasonably drawn from these facts must be construed in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989), *cert. denied*, 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990). Defendants are not entitled to judgment on the pleadings if the complaint raises issues of fact which, if proved, would support recovery. *Id*. at 230.

Like a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a Fed. R. Civ. P. 12(c) motion challenges the legal sufficiency of an opposing party's pleadings. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).  Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). "While a complaint ... does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." *Id* . at 1964. To survive this motion, plaintiff's allegations must be plausible on their face. *Id*. at 1973.

///

**B.     First Amendment Claims**

In Counts One through Seven, Ms. Armstrong asserts a claim of retaliation in violation of the First Amendment against each defendant. "[P]ublic employees do not shed their First Amendment rights simply because they are employed by the government." *Huppert v. City of Pittsburg*, 574 F.3d 696, 702 (9th Cir. 2009). "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). A First Amendment retaliation claim against a government employer in this regard involves a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action event absent the protected speech.

*Eng*, 552 F.3d at 1070. Ms. Armstrong bears the burden on the first three steps, but the burden then shifts to the defendant at the fourth and fifth steps. *Id*. at 1070-72.

Defendants argue that Ms. Armstrong's First Amendment claims are barred by the statute of limitations. In Section 1983 actions, federal courts apply the statute of limitations of the forum state for personal injury claims. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S. Ct. 1938 (1985); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). California Civil Code of Procedure section 335.1 provides a two-year statute of limitations for personal injury claims.

While state law determines the statute of limitations, "[t]he accrual date of a Section 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 127 S.Ct. 1091, 1095 (2007) (emphasis in original). Accordingly, Ms. Armstrong's argument, related to the California discovery rule, is inapposite. Pursuant to federal law, a Section 1983 "claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). "Under federal law, the touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis

5

of his action.'" *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991) (quoting *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)).

To determine when the statute of limitations for a First Amendment retaliation commences, the Court first must "identify precisely the unlawful employment practice of which [the plaintiff] complains." *Delaware College v. Ricks*, 449 U.S. 250, 257 (1980) (internal quotations omitted). Adverse employment actions within the context of a First Amendment retaliation claim are actions taken by a defendant that are "reasonably likely to deter [a plaintiff] from engaging in protected activity under the First Amendment." *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003).

In her third amended complaint, Ms. Armstrong asserts that each Defendant and his or her actions: (1) created a hostile work environment for her; (2) set in motion her termination; and (3) set in motion the criminal prosecution of Ms. Armstrong. This Court considers Ms. Armstrong's claims as to each group of allegations. The Court first considers whether the allegations constitute an "unlawful employment practice." If so, the Court will then consider whether these allegations are barred by the statute of limitations.

As to the hostile work environment, Ms. Armstrong alleges that Defendants created a hostile work environment in an effort to retaliate against her for her speech. In particular, Ms. Armstrong contends that Dr. Akanno physically harassed Ms. Armstrong; Dr. Spaeth verbally harassed Ms. Armstrong; and Defendants disparaged her and made false accusations against her regarding her job performance. These actions qualify as "reasonably likely to deter" Ms. Armstrong from engaging in protected speech. See, *Moore v. California Institute of Technology Jet Propulsion Laboratory*, 275 F.3d 838 (9th Cir. 2002) (several proposals to change his work conditions adversely constituted adverse employment action even though those proposals were never carried out).

As to these hostile work environment allegations, however, Ms. Armstrong had notice of those actions when they took place. According to Ms. Armstrong, Defendants created a hostile work environment while she worked at CDCR from 2005 through 2006. Ms. Armstrong was aware of these actions at the time they took place, since she was the target of the alleged harassment and

contemporaneously experienced the allegations at the time they took place.² The statute of limitations for these claims accrued, at the time Ms. Armstrong had notice of these adverse employment actions. *Hoesterey*, 945 F.2d at 319. Pursuant to the statute of limitations, Ms. Armstrong was required to file her First Amendment claim based on these allegations within two years of those actions. Because the statute of limitations began to accrue on these claims at the time they happened between 2005 and 2006, Ms. Armstrong was required to file her claim in 2007 or 2008. Ms. Armstrong's First Amendment claims based on the hostile work environment, filed in 2010, are untimely. Accordingly, Ms. Armstrong's First Amendment claims are time-barred to the extent that they are based on the hostile work environment allegations.

Ms. Armstrong further asserts that Defendants sought to have her fired and took actions to get her fired "shortly after" she "stood up and spoke out" against what she considered to be "illegalities" occurring at the prison.³ These allegations include wrongfully accusing Ms. Armstrong of improper conduct and forging Ms. Armstrong's resignation letter. Two adverse employment actions are at issue here: (1) the scheme to terminate Ms. Armstrong and (2) Ms. Armstrong's termination. These events began "shortly after" she engaged in the speech, which she alleges to have begun in 2005 and continued through 2006.

Ms. Armstrong had notice of both of those adverse employment actions no later than the time she was placed on a leave of absence in 2006. Thus, the statute of limitations related to the alleged scheme have her terminated from her employment and her termination began to accrue at the time Ms. Armstrong was placed on the leave of absence. As discussed above, Ms. Armstrong was required to assert claims based on these allegations no later than 2008. Accordingly, Ms. Armstrong's untimely First Amendment retaliation claims are barred by the statute of limitations to the extent that they rely on her employment termination.

The third group of allegations relate to Defendants' actions that allegedly set in motion a criminal

---

² This includes allegations discussed in paragraph 12 (a) - (h) and (t) - (w) of the third amended complaint ("TAC").

³ This includes allegations discussed in paragraph 12 (b), (d), (j) - (o) and (q) - (w).

prosecution of Ms. Armstrong.[4] Specifically, Ms. Armstrong alleges that certain defendants "altered vital documents," made slanderous accusations against her, including accusing her of practicing medicine without authority and that she took drugs from the drug cart. In addition, Ms. Armstrong contends that Defendants provided false declarations and testified falsely against her during the criminal prosecution. Some of these actions took place while Ms. Armstrong was employed; others took place after she was terminated.

At this stage of the proceedings, this Court cannot determine that Ms. Armstrong's claims based on the conduct that led to the criminal prosecution are barred entirely as a matter of law. The TAC is not specific as to when the criminal prosecution or the conduct that led to the criminal prosecution happened. As set forth above, in a Fed. R. Civ. P. 12(c) motion, this Court must draw reasonable inferences in Ms. Armstrong's favor. Construing the pleading in a light most favorable to Ms. Armstrong, some of those statements or actions may have occurred within two years of the date this action was filed. To the extent that the allegedly retaliatory conduct took place after April 30, 2008, or within two years of the filing of this civil action on April 30, 2010, the claims based on that conduct are timely. On the other hand, Ms. Armstrong's claims are barred to the extent that they rely on conduct that took place outside the limitations period. Moreover, Ms. Armstrong's claims are barred to the extent that Ms. Armstrong had notice of that conduct outside the limitations period.

**B.     Defamation**

In Counts Eight through Ten, Ms. Armstrong alleges defamation against Ms. Wright-Pearson, Ms Nair, and Ms. Villaruz. Defamation can take the form of slander or libel. Cal. Civ. Code § 44. Slander is defined as a false and unprivileged publication, orally uttered, which:

> 1. Charges any person with crime, or having been indicted, convicted, or punished for crime;
>
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

---

[4] This includes allegations discussed in paragraph 12(b), (d) , and (i) - (w).

> 4. Imputes to him impotence or a want of chastity; or
>
> 5. Which, by natural consequence, causes actual damage.

Cal. Civ. Code § 46. Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye. Cal. Civ. Code § 45. A written statement is libel per se if it defames the plaintiff on its face, that is, without the need of extrinsic evidence to explain the defamatory nature of the statement. Cal. Civ. Code § 45a.

Ms. Armstrong alleges that Ms. Nair, Ms. Wright-Pearson, and Ms. Villaruz made false, oral statements imputing her professional integrity as a nurse, including that she was on drugs, practicing medicine as if she were a physician; and that the narcotics cart was always off-count whenever Ms. Armstrong was working. These allegations state a claim for defamation (slander per se). *See Regalia v. Nethercutt Collection*, 172 Cal. App. 4th 361, 369 (2009) (noting that false allegations of unethical activity or professional incompetence give rise to a claim for slander per se).

Although her allegations are sufficient factually, Defendants contend that Ms. Armstrong's defamation claims fail procedurally. In her TAC, Ms. Armstrong fails to allege that she exhausted her administrative remedies with regards to her defamation claims. Under the California Tort Claims Act, suits against a public entity for damages may not proceed unless the plaintiff presents a written claim that is resolved by the entity. Cal. Gov. Code § 945.4. Pursuant to this Act:

> one who sues a public employee on the basis of acts or omissions in the course of the [employee's] employment [must] have filed a claim against the public entity employer pursuant to the procedure for claims against public entities.

*Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612-13 (1991). Claims are not filed directly with the "public entity," but with the Victim Compensation and Government Claims Board. Cal. Gov't Code § 905.2. In addition to the filing requirement, there are time limits for filing, *id*. at § 911.2, and procedures for applying to file late, *id*. at § 911.4 & 946.6. "Claim presentation is not merely procedural, it is "an integral part of plaintiff's cause of action." *California v. Sup. Court*, 32 Cal.4th 1234, 1240 (2004). Therefore, a plaintiff must allege facts in his complaint demonstrating compliance with the California Tort Claims Act. *Id*. at 1241-42. Otherwise, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. *Id*. Failure to timely present a claim for money or damages to

1  a public entity bars a plaintiff from filing a lawsuit against that entity. *Id*.

2        Ms. Armstrong argues that the California Tort Claim Act claim presentation requirement is
3  inapplicable to her defamation claims because the defamatory statements were made after her
4  employment was terminated. Because the statements were made after her employment was terminated,
5  Ms. Armstrong argues, the statements were not made "in the course of the [defendants'] employment as
6  a public employee[s]," as required. Ms. Armstrong maintains that she discovered that "defendants
7  engaged in defamatory statements about Plaintiff AFTER the time she left the employ of the prison where
8  she and the defendants worked." Ms. Armstrong attached a declaration to her opposition in an attempt
9  to establish these facts outside the allegations of the complaint.

10        Defendants argue that Ms. Armstrong's position contradicts the allegations of the complaint. As
11  to Counts 8 and 9, Ms. Armstrong alleges that the defamatory "statement occurred in or about 2006[.]"
12  TAC ¶¶ 67, 74. As to Count 10, Ms. Armstrong alleges that the defamatory "statement occurred in or
13  about 2005 or 2006[.]" TAC ¶81. Although the TAC establishes the year or years in which the allegedly
14  defamatory statements were made, the TAC is silent as to when Ms. Armstrong's employment was
15  terminated. While the TAC alleges that Ms. Armstrong was placed on a leave of absence in 2006, it does
16  not specify which month the statements were made or when she was placed on leave. In addition, Ms.
17  Armstrong alleges only that she was terminated from CDCR and that Defendants set in motion their
18  scheme to terminate Ms. Armstrong after she spoke out on certain issues. The date of the termination
19  is not specified.

20        Ms. Armstrong improperly attaches a declaration to establish the factual timeline upon which she
21  relies in her opposition. In a Fed. R. Civ. P. 12(c) motion, however, this Court cannot consider
22  documents outside of the pleadings. Accordingly, this Court sustains Defendants' objection to Ms.
23  Armstrong's declaration and will not consider it.

24        Nevertheless, as set forth above, this Court must assume the truthfulness of the material facts
25  alleged in the complaint and construe all reasonable inferences in favor of Ms. Armstrong. *General*
26  *Conference Corp. of Seventh-Day Adventists*, 887 F.2d at 230. According to these standards, and for
27  purposes of this motion, this Court must assume that the statements that were made in 2006 were made
28  during a time when Ms. Armstrong was no longer employed. The allegations do not contradict this

assumption. According to this inference drawn Ms. Armstrong's favor, Defendants fail to establish that the statements were made during the time that Ms. Armstrong was employed.

As to the defamation claims, Defendants fail to establish that they are entitled to judgment in their favor as a matter of law on the pleadings. Defendants' arguments are based on the assumption that the statements were made by Defendants during the time that Ms. Armstrong was employed at CDCR. Based on that premise, Defendants argue that the speech was made "within the scope of their employment." In their reply, Defendants concede that when the statements were made are of "relevant importance" as to the issue of whether Defendants were speaking in the scope of their employment. In addition, Defendants fail to present authority that would establish that statements made about someone who is not employed at the public entity fall within the California Tort Claim Act."[5] Moreover, Defendants' argument assumes facts not alleged in the TAC, and draws inferences against Ms. Armstrong to argue that the allegedly defamatory statements were true. Defendants' arguments are ill-suited for a motion on the pleadings. *See Balistreri*, 901 F.2d at 699 ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one."). Accordingly, based on the appropriate standards, Defendants have failed to establish that they are entitled to judgment on the pleadings as to Ms. Armstrong's defamation claims.

**Leave to Amend**

Ms. Armstrong requests leave to amend her complaint in her opposition to this motion. Because this Court is considering a motion for judgment on the pleadings, leave to amend is improper. To the extent Ms. Armstrong's claims survive this motion, and if appropriate, Ms. Armstrong may raise her motion to amend separately. Accordingly, Ms. Armstrong's request to amend her complaint is denied without prejudice.

CONCLUSION AND ORDER

For the foregoing reasons, this Court:

1. GRANTS in part Defendants' judgment on the pleadings. This Court GRANTS

---

[5] This Court makes no legal conclusion about whether or not such statements may fall within the notice requirement of the California Tort Claims Act. This Court's ruling is based on Defendants' failure to carry their burden to establish that Ms. Armstrong's claims fail as a matter of law.

11

judgment in Defendants' favor on Counts 1-7 to the extent those claims rely on allegations related to hostile work environment and a scheme to terminate Ms. Armstrong;

2. DENIES in part Defendants' judgment on the pleadings. This Court DENIES judgment to the extent that Ms. Armstrong's claims rely on allegations that took place during the limitations period; and

3. DENIES without prejudice Ms. Armstrong's request for leave to amend.

IT IS SO ORDERED.

**Dated:** November 3, 2011      /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE